United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 25, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 23-32924** |
| **50 CROSBY PINES, LTD., 48 HIGHLAND SHORES, LTD., 53 EAGLES COVE, LTD., 171 LONE STAG, LTD., 80 CROSBY TERRACE, LTD., 133 LONE WOLF, LTD., 100 TENNESSEE TOWNSHIP, LTD.,** | § | **CHAPTER 11** |
| **Debtors.** | § | |
| **50 CROSBY PINES, LTD., 48 HIGHLAND SHORES, LTD., 53 EAGLES COVE, LTD., 171 LONE STAG, LTD., 80 CROSBY TERRACE, LTD., and 100 TENNESSEE TOWNSHIP, LTD.,** | § | |
| **Plaintiffs,** | § | |
| **VS.** | § | **ADVERSARY NO. 25-3056** |
| **SOPHIA FILFIL, WOODROW A. HOLLAND, BENEFICIAL TRUST, A TEXAS TRUST, SOPHIA FILFIL, AS TRUSTEE OF BENEFICIAL TRUST, and JOE FOGARTY,** | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION

Pending before the Court is the "Joint Motion for Partial Summary Judgment" ("*Motion*"), Dkt. No. 89, filed by Woodrow A. Holland ("*Holland*"), as Trustee of the Fogarty Family Trust II, and 50 Crosby Pines, Ltd., 48 Highland Shores, Ltd., 53 Eagle's Cove, Ltd., 171 Lone Stag, Ltd., 80 Crosby Terrace, Ltd., and 100 Tennessee Township, Ltd. (collectively, "*Plaintiffs*" or "*Debtors*"), and Legalist, Inc. and Legalist DIP Fund II, LP (together, "*Legalist*", and with Holland and Plaintiffs, collectively, "*Movants*"). Beneficial Trust, a Texas Trust, by and through Sophia

Filfil as Trustee ("*Beneficial Trust*" or "*Filfil*") filed its "Response to Joint Motion for Partial Summary Judgment" ("*Response*") on June 29, 2026. Dkt. No. 93. Movants filed their "Reply in Support of Joint Motion for Partial Summary Judgment" ("*Reply*") on July 13, 2026. Dkt. No. 105. Without the need of a hearing and having carefully reviewed the Motion, Response, Reply, declarations, exhibits, and evidence in the record, and being fully advised in the premises, the Court finds that genuine disputes of material fact preclude the entry of summary judgment. Accordingly, the Motion is DENIED.

## I. BACKGROUND

On July 31, 2023 (the "*Petition Date*"), Debtors filed for bankruptcy protection under chapter 11 of the Bankruptcy Code,[1] initiating the Debtors' underlying bankruptcy case. On February 18, 2025, Plaintiffs filed their "Original Complaint" ("*Complaint*"), Dkt. No. 1, seeking a declaratory judgment as to which partnership agreements govern the business of the Debtors and the identity of their respective limited partners. On January 9, 2026, Filfil filed her "Amended Answer, Counterclaims, and Third-Party Claims" ("*Third-Party Complaint*") at Dkt. No. 34. On January 30, 2026, Plaintiffs filed their "Motion to Dismiss Counterclaims Pursuant to Rule 12(b)(6)" ("*Plaintiffs' Motion to Dismiss*") at Dkt. No. 41.

On March 6, 2026, Joe Fogarty ("*Fogarty*") and the general partners of the Debtors filed answers to the Third-Party Complaint. Dkt. Nos. 64–65. On March 13, 2026, this Court entered an order granting Legalist's motion to intervene in this proceeding. Dkt. No. 66. Legalist filed its "Complaint in Intervention of Legalist, Inc. and Legalist DIP Fund II, LP" on March 17, 2026, Dkt. No. 68, seeking declaratory judgment establishing that the First Amended and Restated

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, Title 11, United States Code, and any reference to "section" (i.e., §) refers to the corresponding section in Title 11, United States Code, unless otherwise indicated. Docket entries made in the Debtors' bankruptcy case, No. 23-32924, shall take the format of Bankr. Dkt. No. __. Entries made in this adversary proceeding, No. 25-3056, shall take the format of Dkt. No. __.

Partnership Agreements (defined below) govern the Debtors. On March 25, 2026, this Court denied Plaintiffs' Motion to Dismiss. Dkt. No. 71. The Court found that Beneficial Trust's alleged injury—its potential loss of partnership interests—did not occur pre-petition because the Debtors did not formally object to the proofs of interest nor file their Complaint seeking to determine the validity of the partnership interests until after confirmation of the "Second Amended Combined Disclosure Statement and Plan of Reorganization, Proposed by Debtors-in-Possession" ("*Plan of Reorganization*") at Bankr. Dkt. No. 200. On June 8, 2026, Movants filed the instant Motion seeking partial summary judgment declaring that (1) the Original Partnership Agreements (defined below) were not validly amended by the Purported Partnership Agreements (defined below) and (2) the First Amended and Restated Partnership Agreements (defined below) are the operative agreements governing the Debtors. Dkt. No. 89.

**A. Summary of Movants' Arguments**

Movants seek a declaration that the partnership agreements executed in or around October 2022 (the "*Purported Partnership Agreements*" or "*Beneficial Partnership Agreements*"), which purportedly admitted Beneficial Trust as a 9% limited partner, are void. Dkt. No. 89, at 11–15. Movants contend that Holland, as the 99% limited partner under the original partnership agreements executed between May 2021 and January 2022 ("*Original Partnership Agreements*"), never consented to these amendments. *Id.* at 3. Movants argue that the Purported Partnership Agreements are invalid for three principal reasons: first, the Original Partnership Agreements require written consent of all limited partners and the general partner for any amendment. *Id.* Holland allegedly never provided such written consent. *Id.* at 11. Second, the admission of Beneficial Trust as a new limited partner required compliance with specific procedures set forth in the Original Partnership Agreements, including written consent of the general partner and a

majority in interest of the limited partners, along with satisfaction of various conditions precedent. *Id.* at 12–13. Movants allege that these procedures were not followed. *Id.* at 13. Third, any transfer of Holland's limited partnership interests required written consent of the general partner and a majority in interest of the limited partners. *Id.* at 13–14. Movants allege that Holland never transferred his interests except as provided in the First Amended and Restated Partnership Agreements executed on July 25, 2024 ("*First Amended and Restated Partnership Agreements*"). *Id.* at 14.

Movants further contend that Fogarty, Kerry Ready, as trustee of the Ready, Baker and Moore Trust, and Holland all represented and warranted in the Beneficial Claims Agreement dated July 25, 2024 ("*Beneficial Claims Agreement*") that neither Beneficial Trust nor the Ready, Baker and Moore Trust had valid claims to limited partnership interests in the Debtors. *Id.* Finally, Movants argue that the First Amended and Restated Partnership Agreements properly amended the Original Partnership Agreements in accordance with the "Order Confirming Second Amended Combined Disclosure Statement and Plan of Reorganization, Proposed by Debtors-in-Possession" ("*Confirmation Order*") at Bankr. Dkt. No. 305 and represent the current governing agreements. *Id.* at 15–16.

**B. Summary of Beneficial Trust's Arguments**

Beneficial Trust opposes the Motion on multiple grounds, asserting that genuine disputes of material fact preclude summary judgment. First, Beneficial Trust contends that the Ready, Baker and Moore Trust and the Fogarty Family Trust II share identical beneficiaries—Kerry Ready, Matthew Baker, and Kelly Moore—suggesting that the transfer of interests represents a fraudulent scheme to deprive Beneficial Trust of its legitimate 9% partnership interest. Dkt. No. 93, ¶¶ 2–3. Second, Beneficial Trust argues that Fogarty recognized in a January 31, 2023 email

that Filfil had interests in "other projects" and threatened to reduce her ownership, stating: "[a]s soon as I gave you new partnership agreements you quit taking my call, refuse to return my call. I must assume you are not working on those projects. Your refusal to do so amounts to a failure of consideration and may allow a reduction in your ownership." *Id.* ¶ 24. This email, Beneficial Trust contends, demonstrates Fogarty's acknowledgment of Beneficial Trust's ownership interests. *Id.* ¶¶ 24–27. Third, Beneficial Trust points to evidence that Filfil provided substantial value to the partnerships, contrary to Fogarty's subsequent claims. *Id.* ¶ 26. On October 27, 2022, Fogarty wrote: "No. I will get Sophia to call. She arranged seller financing" for 50 Crosby Pines. *Id.* Beneficial Trust argues that Filfil negotiated seller financing for multiple projects, including Acorn Ranch and 50 Crosby Pines.

Fourth, Beneficial Trust emphasizes that Holland served as attorney for Fogarty, Arete Real Estate & Development, Inc., the Ready, Baker and Moore Trust, the Fogarty Family Trust II, and Beneficial Trust. *Id.* ¶ 1. Holland allegedly set up Beneficial Trust specifically for holding partnership interests. *Id.* ¶ 14. Beneficial Trust argues there is a fact issue as to whether Holland knew or should have known about the Beneficial Partnership Agreements in 2021. *Id.* ¶ 5. Fifth, Beneficial Trust highlights Holland's February 2, 2023 email to Filfil, in which he stated: "I feel the same way about Joe. Despite his promises, he is currently trying to steal my legal services over the past years without paying for them. I have withdrawn representing him in any matter. Let's wish each other good luck in collecting from Joe what he has stolen." *Id.* ¶ 15. Beneficial Trust contends this email demonstrates that Holland knew of Filfil's equity claims and did not dispute them. *Id.* ¶ 36. Sixth, Beneficial Trust argues that Fogarty admitted in his May 21, 2024 declaration that he "created new, putative partnership agreements" for the Debtors while Holland was sick. *Id.* ¶ 41. This raises fact issues about Holland's knowledge and whether he ratified the Beneficial

Partnership Agreements through silence or inaction. Finally, Beneficial Trust contends that Movants improperly seek to reargue issues already decided by this Court's March 25, 2026 Order denying Plaintiffs' Motion to Dismiss. *Id.* ¶¶ 46–52.

## II. JURISDICTION, VENUE, & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334(a)–(b), which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will preside over the matter. 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), the instant proceeding contains core matters because it seeks relief affecting the administration of the estate and the equity security holder relationship.

Furthermore, this Court may only hear a case in which venue is proper. 28 U.S.C. § 1408. Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtors' underlying bankruptcy cases are pending in this Court. Bankr. Dkt. Nos. 1, 34. Therefore, venue is proper.

The pending dispute is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Thus, this Court has constitutional authority to enter a final judgment. Nevertheless, entering an interlocutory order does not implicate "the constitutional limitations on the Court's authority to enter final judgments." *West v. WRH Energy Partners LLC (In re Noram Res., Inc.)*, No. 10-3703, 2011 Bankr. LEXIS 5183, at *3 (Bankr. S.D. Tex. Dec. 30, 2011). Therefore, this Court need not

determine whether it has constitutional authority to enter a final order because an interlocutory order is all that is required by the instant Motion for Summary Judgment.

## III. Legal Standard

Federal Rule of Civil Procedure ("*Rule*") 56 permits a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings. Rule 56 states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). Courts employing this standard of review must determine "not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To prevail on summary judgment, the moving party has the burden of showing "the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law." *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Rule 56 creates a shifting burden. Once a properly supported motion for summary judgment is presented, “the nonmoving party must rebut with ‘significant probative’ evidence.” *Ferguson v. Nat’l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted). “If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.” *Steadman v. Tex. Rangers*, 179 F.3d 360, 366 (5th Cir. 1999) (citation omitted). When there is no genuine issue for trial, the Court should grant summary judgment. *Id.* In determining whether summary judgment is appropriate, a court is not to weigh evidence, assess its probative value, or resolve factual disputes, *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996), but the facts must be reviewed with all “justifiable inferences” drawn in the nonmovants’ favor. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citation omitted). Nevertheless, factual controversies will be resolved in the nonmovant’s favor “only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts.” *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996) (citation omitted). If, however, the record could not lead a rational trier of fact to find for non-movants, summary judgment is appropriate. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. While the Court may consider other materials in the record, it need only consider those actually cited by the parties. Fed. R. Civ. P. 56(c)(3). Where the facts are undisputed and only questions of law exist, a court must apply the appropriate law to the facts to determine whether the moving party is entitled to judgment as a matter of law. *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991) (“[S]ummary judgment is appropriate where the only issue before the court is a pure question of law.” (citation omitted)).

## IV. Analysis

The central issue in this case is which set of partnership agreements govern the Debtors and identify the limited partners. Movants contend the Purported Partnership Agreements are void; Beneficial Trust contends they are valid and enforceable. The Court finds that genuine disputes of material fact exist regarding the formation, validity, and effect of these agreements.

### A. Evidence Supporting Beneficial Trust's Position

The record contains substantial evidence supporting Beneficial Trust's claim that the Purported Partnership Agreements validly amended the Original Partnership Agreements or that Holland ratified the amendments.

#### 1. Fogarty's Acknowledgment of Beneficial Trust's Interests

On January 31, 2023, Fogarty sent an email to Filfil stating: "[a]s to your interest in other projects, [y]ou absolutely agreed to work diligently on all projects from start to finish. As soon as I gave you new partnership agreements you quit taking my call, refuse to return my call." Dkt. No. 93-1, at 108. This statement acknowledges that Fogarty "gave" Filfil "new partnership agreements" and that she had "interest in other projects." *Id.* A reasonable factfinder could interpret this as Fogarty's admission that Beneficial Trust held valid ownership interests in the Debtors. Fogarty further stated in the same email: "[y]our refusal to do so amounts to a failure of consideration and may allow a reduction in your ownership." *Id.* This language suggests Fogarty believed Beneficial Trust had "ownership" that he had the discretionary authority to "reduce"—not that the Purported Partnership Agreements were void ab initio.

#### 2. Holland's Alleged Knowledge and Acquiescence

The record indicates that Holland served as attorney for multiple entities and individuals, including Fogarty, Arete Real Estate & Development, Inc., the Ready, Baker and Moore Trust, the

Fogarty Family Trust II, and Beneficial Trust. Dkt. No. 93, ¶ 1. Holland allegedly set up the Beneficial Trust specifically to hold partnership interests. *Id.* ¶ 14. On January 31, 2023, Filfil sent an email copied to Holland and others, stating that her "equity positions" in East Lake Houston were at risk. Dkt. No. 93-1, at 106. Holland did not dispute Filfil's claim to equity positions. Instead, on February 2, 2023, Holland responded: "Sophia, I feel the same way about Joe. Despite his promises, he is currently trying to steal my legal services over the past years without paying for them. I have withdrawn representing him in any matter. Let's wish each other good luck in collecting from Joe what he has stolen." *Id.* at 109. A reasonable factfinder could interpret Holland's response as acknowledgment of Filfil's equity claims and an implicit agreement that Fogarty had wrongfully deprived both Holland and Filfil of what they were owed. Holland's wish of "good luck in collecting from Joe what he has stolen" could be construed as supporting Filfil's position that she held legitimate ownership interests in the Debtors.

Under Texas law, ratification may occur "through 'any' conduct that is 'inconsistent with an intent to avoid' that action." *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 208 (Tex. 2021). The Texas Supreme Court has explicitly associated "[p]rolonged silence or inaction in not asserting a known right" with the doctrine of waiver, referencing it as conduct that may amount to waiver rather than ratification. *Hooks v. Samson Lone Star, LP*, 457 S.W.3d 52, 66 (Tex. 2015) (internal quotation marks and citation omitted). Here, if Holland knew of Filfil's and Beneficial Trust's claimed ownership in the Debtors in 2023 and failed to raise any challenge until his June 2026 Declaration, a reasonable factfinder could determine that Holland ratified or waived objection to the Purported Partnership Agreements through silence.

**3. Evidence of Filfil's Performance and Consideration**

Beneficial Trust has presented evidence that Filfil provided value to the partnerships. On October 27, 2022, Fogarty wrote: "No. I will get Sophia to call. She arranged seller financing" for 50 Crosby Pines. Dkt. No. 93-1, at 100. Filfil's affidavit states that she "secured financing for Acorn Ranch through my funding company and assisted with coordinating the engineering and contractor engagement." *Id.* at 2. The Beneficial Partnership Agreements do not require Beneficial Trust to contribute capital or impose specific performance obligations as a condition of the 9% limited partnership interest. Nevertheless, the evidence that Filfil arranged seller financing and provided other services could support a finding that consideration existed or that Fogarty waived any requirement of performance through his conduct.

**4. Fogarty's Declaration Regarding Creation of Partnership Agreements**

In his "Declaration Under Penalty of Perjury" supporting the Omnibus Objection to Proofs of Interest filed May 21, 2024, Fogarty stated under penalty of perjury:

> At the time, the attorney who drafted the foregoing partnership agreements and other legal documents for the partnerships was Woodrow Holland, and he had custody of the partnership agreements. When Filfil was seeking to be named as partner, Holland was unable to make the changes to the partnership agreements due to medical treatment that he was then undergoing. I used an existing partnership agreement for another entity and created new, putative partnership agreements, for the foregoing entities. Under the putative partnership agreements, the General Partners remained unchanged; however, the limited partners were listed as: a. Kerry Ready, Trustee of the Ready, Baker and Moore Trust, owning a 90 percent limited partnership interest, and b. Beneficial Trust, of which Sophia Filfil was the Trustee, owning a 9 per cent limited partnership interest.

Dkt. No. 93-2, at 2. Fogarty's admission that he "created new, putative partnership agreements" while Holland was undergoing medical treatment raises fact issues about the circumstances surrounding the formation of both the Original Partnership Agreements and the Purported

Partnership Agreements. It also creates questions about whether Holland subsequently learned of and ratified the Purported Partnership Agreements.

**5. Identical Beneficiaries of the Two Trusts**

The record reflects that the Ready, Baker and Moore Trust and the Fogarty Family Trust II share identical beneficiaries: Kerry Ready (Fogarty's daughter), Matthew Baker (Fogarty's grandson), and Kelly Moore (Fogarty's daughter). Dkt. No. 93, ¶ 2. A reasonable factfinder could infer that the substitution of the Fogarty Family Trust II for the Ready, Baker and Moore Trust—accomplished through the First Amended and Restated Partnership Agreements executed on July 25, 2024—was designed to divest Beneficial Trust of its 9% interest while keeping the beneficial ownership within the same family members. Texas law recognizes "badges of fraud" for evaluating transfers. Tex. Bus. & Com. Code § 24.005(b); *G.M. Houser, Inc. v. Rodgers*, 204 S.W.3d 836, 842–43 (Tex. App.—Dallas 2006, no pet.). Because direct proof of fraudulent intent is often unavailable, these circumstantial factors are used to establish intent. *G.M. Houser, Inc.*, 204 S.W.3d at 842; *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. App.—Dallas 2007, no pet.). Relevant factors include whether: (1) the transfer or obligation was to an insider; (2) the debtor retained control of the property transferred; (3) the transfer or obligation was concealed; and (4) before the transfer was made, the debtor had been threatened with suit. Tex. Bus. & Com. Code § 24.005(b). Here, the transfer of partnership interests from one family trust to another family trust with identical beneficiaries, following disputes with Filfil and threats to reduce her ownership, could support an inference of fraudulent intent.

**B. Evidence Supporting Movants' Position**

Movants have also presented substantial evidence supporting their position that the Purported Partnership Agreements are void.

**1. Holland's Declaration**

Holland declared under penalty of perjury that he never agreed to amend the Original Partnership Agreements to allow the Purported Partnership Agreements to supersede them. Holland stated that he "did not consent to transfer, assign or otherwise convey any interest, including but not limited to, [his] limited partnership interests in Plaintiffs except as contemplated by the First Amended and Restated Partnership Agreements." Dkt. No. 90, ¶ 9. He further declared that "[t]here was no satisfaction or waiver of the conditions set forth in section 10.8 of the Original Partnership Agreements at any time in connection with the Purported Partnership Agreements." *Id.* ¶ 11. He affirmed that "[a]t no time did [he] authorize[ ] or consent[ ] to the divestment of any equity interest in any of the [Plaintiffs], except as provided for in the First Amended and Restated Partnership Agreements, made in accordance with the Confirmation Order." *Id.* ¶ 13.

**2. Express Amendment Requirements in Original Partnership Agreements**

The Original Partnership Agreements contain explicit provisions governing amendments and the admission of new partners. Section 11.1 provides that amendments may be proposed by either the general partner or a majority in interest of the limited partners, but to become effective, "all Limited Partners and the General Partner shall have given their written consent to the amendment." Dkt. No. 89, at 11. Additionally, any amendment that increases the liability of a partner, changes contributions required, or alters rights in profits, losses, or distributions becomes "effective as to that partner only on his or her written acceptance of the amendment." *Id.*

Section 8.1 provides that no additional limited partners may be admitted "except by amendment" of the partnership agreement. *Id.* at 12. Alternatively, Section 10.8 sets forth detailed procedures for substituting a limited partner, including requirements that the transferor and transferee provide specific information and documents, including an attorney's opinion letter

regarding securities law compliance. *Id.* at 12–13. Section 10.6 provides that the sale, assignment, transfer, encumbrance, or other disposition of a limited partnership interest requires the written consent of the general partner and a majority in interest of the limited partners. *Id.* at 13.

If these provisions are strictly enforced, and if Holland's testimony that he never provided written consent is credited, then the Purported Partnership Agreements could be void for failure to comply with mandatory amendment procedures.

### 3. Beneficial Claims Agreement

On July 25, 2024, in connection with the Plan of Reorganization and the Loan and Security Agreement with Legalist ("*Loan and Security Agreement*"), Bankr. Dkt. No. 295-1, at 1–70, Fogarty, Kerry Ready, and Holland entered the Beneficial Claims Agreement. Dkt. No. 90, ¶ 9. In the Beneficial Claims Agreement, Fogarty represented and warranted that: (a) he had no knowledge of consent by Holland to the transfer of any limited partnership interests in Plaintiffs to Beneficial Trust, Ready, or anyone else, and (b) neither Beneficial Trust nor the Ready, Baker and Moore Trust had valid claims to the limited partnership interests in Plaintiffs. Dkt. No. 90-26, ¶ 2.1. Kerry Ready represented and warranted that she claimed no interest, including but not limited to a limited partnership interest, in the Plaintiffs. *Id.* ¶ 2.2. Holland represented and warranted that: (a) he did not consent to, transfer, assign, or otherwise convey any interest, including but not limited to his limited partnership interests in Plaintiffs, except as contemplated by the First Amended and Restated Partnership Agreements; and (b) before entering into the First Amended and Restated Partnership Agreements, Holland owned all of the limited partnership interests in Plaintiffs. *Id.* ¶ 2.3. These representations and warranties, if binding and enforceable, support Movants' position that neither Beneficial Trust nor the Ready, Baker and Moore Trust held valid partnership interests.

**4. First Amended and Restated Partnership Agreements and Confirmation Order**

Movants contend that the First Amended and Restated Partnership Agreements executed on July 25, 2024, properly amended the Original Partnership Agreements because Holland, as the sole limited partner, and each general partner signed those agreements, constituting written consent. Dkt. No. 89, at 7. The Loan and Security Agreement approved by the Court in connection with the Confirmation Order specifically required Legalist to be admitted as a limited partner of each Debtor. *Id.* at 6. The Confirmation Order, entered on April 24, 2024, became a final order, and the conditions to the effectiveness of the Plan of Reorganization, including execution of the First Amended and Restated Partnership Agreements, were satisfied on or about July 25, 2024. *Id.* at 4, 7. Movants argue that Beneficial Trust had the opportunity to review the Plan of Reorganization and Loan and Security Agreement prior to the confirmation hearing, did not object to the Plan of Reorganization or Loan and Security Agreement, and was represented by counsel at the confirmation hearing without raising objections. *Id.* at 16.

**C. Material Factual Disputes Preclude Summary Judgment**

Viewing the evidence in the light most favorable to Beneficial Trust, as the Court must, genuine disputes of material fact exist on multiple essential issues, including but not limited to:

**1. Whether Holland Consented to or Ratified the Beneficial Partnership Agreements**

Movants rely heavily on Holland's declaration that he never consented to the Purported Partnership Agreements. However, Beneficial Trust has presented evidence that:

i. Holland served as attorney for Beneficial Trust and set up the trust to hold partnership interests, Dkt. No. 93, ¶ 14;

ii. Holland was copied on Filfil's January 31, 2023 email claiming "equity positions" in the East Lake Houston projects and did not dispute those claims, Dkt. No. 93-1, at 106;

iii. Holland's February 2, 2023 response to Filfil expressed sympathy with her grievances against Fogarty and wished her "good luck in collecting from Joe what he has stolen," without disputing her equity claims, *id.* at 109; and

iv. On December 16, 2021, shortly after the Beneficial Partnership Agreements were allegedly signed, Filfil requested Holland to make changes to the Beneficial Trust, raising a fact issue as to whether Holland acted as Filfil's and Beneficial Trust's attorney and had knowledge of the Beneficial Partnership Agreements in 2021. Dkt. No. 93, ¶ 44.

A reasonable factfinder could find that Holland knew about the Beneficial Partnership Agreements when they were executed or shortly thereafter, and that his prolonged silence or inaction from 2021 through early 2023—including his response to Filfil's January 2023 email asserting equity interests—constituted ratification under Texas law. Conversely, a reasonable factfinder could credit Holland's declaration and find that he never consented to or ratified the Purported Partnership Agreements, that his February 2023 email was merely a statement of sympathy unrelated to the partnership dispute, and that his knowledge as attorney for Beneficial Trust does not equate to consent as trustee of the Fogarty Family Trust II.

**2. Whether Fogarty Acknowledged Beneficial Trust's Valid Ownership Interests**

Fogarty's January 31, 2023 email to Filfil stated: "[a]s to your interest in other projects, [y]ou absolutely agreed to work diligently on all projects from start to finish. As soon as I gave you new partnership agreements you quit taking my call, refuse to return my call." Dkt. No. 93-1, at 108. Fogarty further stated: "[y]our refusal to do so amounts to a failure of consideration and may allow a reduction in your ownership." *Id.* A reasonable factfinder could interpret these statements as Fogarty's acknowledgment that Beneficial Trust had valid "ownership" interests that he had discretion to "reduce" based on Filfil's alleged failure to perform—not that the Purported Partnership Agreements were void from inception. This interpretation is supported by Fogarty's statement that he "gave" Filfil "new partnership agreements," suggesting he participated in

creating and delivering those agreements. On the other hand, a reasonable factfinder could interpret Fogarty's statements as recognizing only a contingent or disputed claim that was never perfected due to Filfil's alleged failure to perform. The email's reference to "failure of consideration" could support an argument that any agreement was conditional and never became binding.

**3. Whether Beneficial Trust Provided Consideration**

Movants argue that the Purported Partnership Agreements are void for lack of consideration or failure of conditions precedent. Dkt. No. 89, at 3. However, Beneficial Trust has presented evidence that Filfil arranged seller financing for 50 Crosby Pines and other projects, negotiated purchase and sale agreements, lending agreements, and engineering agreements, and otherwise contributed services to the Debtors. Dkt. No. 93, ¶¶ 10, 26. The Beneficial Partnership Agreements contain no express provision requiring Beneficial Trust to contribute capital or perform specific services in exchange for the 9% ownership interest. Section 8.2 states only that a limited partner does not have an obligation or right to participate in the control or management of the partnerships. *Id.* ¶ 27.

Under Texas law, partnership agreements are contracts subject to the rules of contract construction. *Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, 394 S.W.3d 186, 202 (Tex. App.—Houston 2012, no pet.) (citation omitted); *Driveway Aus. GP, LLC v. Turbo Partners, LLC*, 409 S.W.3d 197, 207 (Tex. App.—Amarillo 2013, pet. denied) (citation omitted). The Supreme Court of Texas has established that the rules of contract construction apply directly to the interpretation of partnership agreements. *In re Waggoner Est.*, 163 S.W.3d 161, 165 (Tex. 2005) (citation omitted). When construing a contract, the Court's primary objective is to give effect to the parties' intent as expressed in the instrument. *Id.* at 166 (citation omitted). The Court must read the language used by the parties so as not to render any provisions meaningless and must consider

the entire partnership agreement. *Id.* (citation omitted). Here, a factfinder must determine whether consideration existed, whether any performance obligations were conditions precedent to Beneficial Trust's partnership interest, and whether those conditions (if any) were satisfied or waived. Subsequent conduct—including Fogarty's acknowledgment of Filfil's contributions and his statements about reducing her ownership for failure to perform—creates genuine disputes about these issues.

**4. Whether the Transfer to Fogarty Family Trust II Was Fraudulent**

Beneficial Trust contends that the substitution of the Fogarty Family Trust II (with Holland as sole trustee) for the Ready, Baker and Moore Trust (with Kerry Ready as trustee)—both trusts having identical beneficiaries—constitutes a fraudulent scheme to divest Beneficial Trust of its 9% interest. Dkt. No. 93, ¶ 32. The evidence shows that: (i) the Ready, Baker and Moore Trust and the Fogarty Family Trust II share identical beneficiaries: Kerry Ready, Matthew Baker, and Kelly Moore, *id.*; (ii) the Purported Partnership Agreements, executed in or around October 2022, listed the Ready, Baker and Moore Trust as a 90% limited partner and Beneficial Trust as a 9% limited partner, Dkt. No. 93-2, ¶ 5; and (iii) the First Amended and Restated Partnership Agreements, executed July 25, 2024, substituted the Fogarty Family Trust II as a 98% (or 88% for 80 Crosby Terrace) limited partner, with Legalist holding 1%, eliminating Beneficial Trust entirely. Dkt. No. 89, at 7. This substitution occurred after disputes between Fogarty and Filfil, including Fogarty's threats to reduce Filfil's ownership and foreclosure proceedings involving Acorn Ranch. Dkt. No. 93, ¶ 11.

Texas law recognizes several "badges of fraud," including whether: (1) the transfer was to an insider; (2) the debtor retained control of the property transferred; (3) the transfer was concealed; and (4) the debtor had been threatened with suit before the transfer. Tex. Bus. & Com.

Code § 24.005(b). A reasonable factfinder could find that the transfer of interests from one family trust to another with identical beneficiaries, following Fogarty's disputes with Filfil, bears indicia of fraud. However, a reasonable factfinder could also find that the substitution of the Fogarty Family Trust II was a legitimate restructuring required by the DIP financing agreement and the Plan of Reorganization, that Holland held legal title to the partnership interests under the Original Partnership Agreements and had the right to transfer them as part of the confirmed Plan of Reorganization, and that the timing was driven by bankruptcy proceedings rather than fraudulent intent.

**5. Whether the Original Partnership Agreements or Purported Partnership Agreements Control**

At the heart of this dispute is a fundamental question: which set of partnership agreements was valid and enforceable as of the Petition Date and confirmation of the Plan of Reorganization? Movants contend the Original Partnership Agreements (executed May 2021 through January 2022) were never validly amended because Holland never gave written consent as required by those agreements. Dkt. No. 89, at 11–12. Beneficial Trust contends the Purported Partnership Agreements (executed in or around October 2022) validly amended the Original Partnership Agreements, or alternatively that Holland ratified the amendments through his knowledge and conduct. Dkt. No. 93, ¶¶ 36–40. As counsel for the Debtors acknowledged at the hearing on Filfil's Motion to Amend, "there is a question of which partnership agreements control in this case." *Id.* ¶ 4.

The evidence creates genuine disputes about: (a) whether the Original Partnership Agreements' amendment requirements were satisfied; (b) whether Holland consented to or ratified the Purported Partnership Agreements; (c) whether Fogarty's conduct (including creating the Purported Partnership Agreements and acknowledging Filfil's ownership interests) estopped

Movants from challenging the validity of those agreements; (d) whether the Purported Partnership Agreements were void ab initio or merely voidable and subsequently ratified; and (e) what legal effect, if any, should be given to subsequent conduct and representations. These are quintessential fact questions that cannot be resolved on summary judgment.

**D. Credibility Determinations and Conflicting Testimony**

Resolution of this dispute requires the Court to make credibility determinations and weigh conflicting evidence—tasks inappropriate for summary judgment. Holland's June 2026 declaration states unequivocally that he never consented to the Purported Partnership Agreements and never transferred his limited partnership interests except as provided in the First Amended and Restated Partnership Agreements. Dkt. No. 90, ¶ 9. However, Filfil's affidavit states that Holland served as attorney for Beneficial Trust, set up the trust to hold partnership interests, and "provided the forms for the Partnership Agreements" that were signed in 2021. Dkt No. 93-1, at 2. Holland's February 2, 2023 email to Filfil—in which he wished her "good luck in collecting from Joe what he has stolen" without disputing her claimed equity interests, *id.* at 109—could contradict his later declaration that he never knew of or consented to Beneficial Trust's partnership interests, Dkt. No. 90, ¶ 9. Similarly, Fogarty's January 31, 2023 email acknowledging that he "gave" Filfil "new partnership agreements" and referring to her "ownership" in the projects, Dkt. No. 93-1, at 108, could contradict his May 2024 declaration asserting that the Purported Partnership Agreements were merely "putative" and never valid, Dkt. No. 93-2, at 2. A factfinder must assess the credibility of these witnesses, weigh conflicting testimony, and resolve factual disputes. These determinations cannot be made on summary judgment.

### E. The Parol Evidence Rule and Contract Interpretation

Beneficial Trust argues that the Beneficial Partnership Agreements are unambiguous and that the Court should limit the parties' factual positions to the four corners of those agreements without considering parol evidence. Dkt. No. 93, ¶ 45. Under Texas law, "[i]n construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citation omitted). Courts must interpret and read a contract so as to not render any of its provisions meaningless and strive to honor the parties' agreement and not make remake their contract. *Waggoner*, 163 S.W.3d at 165–66. The Texas Supreme Court has established that "[t]he goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (citation omitted). This intent must be derived directly from the agreement itself rather than from the parties' subjective or present interpretations, and the contract must be enforced as it is written. *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.).

Under Texas law, to prevent contract interpretations that contradict the plain language of the contract, courts must not consider parol evidence when a contract is unambiguous. *Sacks v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008) (citation omitted). "A contract is not ambiguous simply because the parties advance conflicting interpretations." *Nustar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App.—Houston 2013, no pet.) (citation omitted). However, the threshold question of which partnership agreement governs—the Original Partnership Agreements, the Purported Partnership Agreements, or the First Amended and Restated Partnership Agreements—requires the Court to consider extrinsic evidence regarding the formation, amendment, consent to, and validity of these competing agreements.

This is precisely the type of factual inquiry that precludes summary judgment. Moreover, even if the Beneficial Partnership Agreements are unambiguous on their face, Movants' challenge is not to the meaning of those agreements but instead to their validity and enforceability. Movants contend the Beneficial Partnership Agreements are void because they were executed without the required consent under the Original Partnership Agreements. Dkt. No. 89, at 11–12. This defense goes to contract formation, not interpretation, and extrinsic evidence regarding consent, ratification, and the parties' conduct is relevant and admissible.

**F. Applicability of Texas Partnership Law**

The Original Partnership Agreements, Purported Partnership Agreements, and First Amended and Restated Partnership Agreements are each governed by Texas law pursuant to contractual choice-of-law clauses. *Id.* at 9. Under Texas law, a partnership is a contract between partners. *Ingram v. Deere*, 288 S.W.3d 886, 893–94 (Tex. 2009). "[A] partnership agreement governs the relations of the partners and between the partners and the partnership." Tex. Bus. Orgs. Code § 152.002(a). However, if the partnership agreement does not otherwise provide, the Texas Business Organizations Code "govern[s] the relationship between the partners and between the partners and the partnership." *Id.* Texas Business Organizations Code Section 153.101(b) provides that once a limited partnership is formed, a person that acquires a partnership interest in the limited partnership becomes a new limited partner upon "compliance with the provisions of the partnership agreement governing admission of new limited partners" or "if the partnership agreement does not contain relevant admission provisions, the written consent of all partners."

Here, the Original Partnership Agreements contain detailed provisions governing amendments, admission of new partners, and transfers of partnership interests. Specifically: Section 11.1 requires that "all Limited Partners and the General Partner shall have given their

written consent to the amendment" for any amendment to become effective. Dkt. No. 89, at 11. Section 8.1 provides that no additional limited partners may be admitted "except by amendment" of the partnership agreement. *Id.* at 12. Section 10.8 sets forth specific conditions for substituting a limited partner, including requirements for information, instruments, attorney opinions, and consents. *Id.* at 12–13. Section 10.6 requires "written consent of the General Partner and a majority in interest of the Limited Partners" for any "sale, assignment, transfer, encumbrance, or other disposition of a limited partnership interest." *Id.* at 13.

Whether these provisions were satisfied is a disputed question of fact. Holland's declaration states that they were not satisfied and he did not consent. Dkt. No. 90, ¶ 9. Beneficial Trust contends that Holland either consented, ratified the amendments through his knowledge and conduct, or is estopped from challenging the validity of the Purported Partnership Agreements based on his role as attorney for Beneficial Trust and his subsequent statements. Dkt. No. 93, ¶¶ 24–45. These factual disputes must be resolved by the trier of fact, not on summary judgment.

### G. The Beneficial Claims Agreement Does Not Resolve Factual Disputes

Movants emphasize that in the Beneficial Claims Agreement executed July 25, 2024, Fogarty, Kerry Ready, and Holland each represented and warranted that Beneficial Trust had no valid claims to partnership interests in the Debtors. Dkt. No. 89, at 14. However, the execution of the Beneficial Claims Agreement does not eliminate the factual disputes regarding the validity of the Purported Partnership Agreements executed in October 2022 or the parties' conduct between 2022 and 2024. First, the Beneficial Claims Agreement was executed nearly two years after the Purported Partnership Agreements and after disputes had arisen between the parties. Beneficial Trust contends the agreement was executed as part of a scheme to divest Beneficial Trust of its legitimate interests. Dkt. No. 93, ¶ 3. Second, the representations and warranties in the Beneficial

Claims Agreement directly conflict with Fogarty's prior January 31, 2023 email acknowledging Filfil's "interest in other projects" and "ownership," Dkt. No. 93-1, at 108, and with Holland's February 2, 2023 email wishing Filfil "good luck in collecting from Joe what he has stolen" without disputing her equity claims, *Id.* at 109. Third, the Beneficial Claims Agreement was executed in connection with DIP financing and as a condition precedent to Legalist providing funding. Dkt. No. 89, at 6–7. A factfinder must determine whether the agreement represents the parties' genuine understanding of the facts or was instead a negotiated condition of financing that does not reflect historical reality. The existence of conflicting statements and conduct before and after the Beneficial Claims Agreement creates genuine disputes of material fact that preclude summary judgment.

**H. This Court's Prior Ruling Does Not Compel Summary Judgment**

On March 25, 2026, this Court denied Plaintiffs' Motion to Dismiss Beneficial Trust's Counterclaims, finding that Beneficial Trust's alleged injury—its potential loss of partnership interests—did not occur pre-petition because there had not yet been a determination as to whether Beneficial Trust's purported partnership interests were valid or invalid. Dkt. No. 71. The Court held that:

> Debtors did not formally object to the Proofs of Interest nor file their Complaint seeking to determine the validity of the Partnership Interests until after confirmation of the Debtors' Plan. There has not yet been a determination as to whether Beneficial Trust's purported Partnership Interests are valid or invalid. Thus . . . the Court finds that Beneficial Trust's alleged injury—its potential loss of the Partnership Interests—did not occur pre-petition.

*Id.* at 5–6.

That ruling necessarily recognized that the validity of Beneficial Trust's partnership interests remained a disputed factual and legal question to be determined through further proceedings. The instant Motion seeks to resolve that question through summary judgment.

However, for the reasons stated above, genuine disputes of material fact preclude such resolution at this stage. The Court's prior ruling does not compel a finding in favor of either party on the merits; it simply determined that Beneficial Trust's counterclaims were not time-barred. The validity of the competing partnership agreements remains to be adjudicated.

## V. CONCLUSION

For the foregoing reasons, the Court finds that genuine disputes of material fact exist regarding the validity and enforceability of the Original Partnership Agreements, the Purported Partnership Agreements, and the First Amended and Restated Partnership Agreements. Specifically, disputed questions of fact exist as to, including but not limited to:

a. Whether Holland consented to or ratified the Purported Partnership Agreements;

b. Whether Fogarty acknowledged the validity of Beneficial Trust's partnership interests through his statements and conduct;

c. Whether the amendment and admission procedures required by the Original Partnership Agreements were satisfied;

d. Whether Beneficial Trust provided consideration for its alleged partnership interest;

e. Whether the transfer to the Fogarty Family Trust II was fraudulent;

f. The credibility of the witnesses and the weight to be given to their conflicting statements; and

g. Which partnership agreements validly governed the Debtors as of the Petition Date and confirmation of the Plan of Reorganization.

These disputes are material because they go to the heart of the parties' claims and defenses. Resolution of these disputes requires credibility determinations, assessment of the parties' intent, evaluation of their subsequent conduct, and application of Texas partnership and contract law to contested facts. Such determinations are the province of the factfinder, not the Court on summary judgment. Viewing the evidence in the light most favorable to Beneficial Trust, as the Court must,

a reasonable factfinder could find that the Purported Partnership Agreements validly amended the Original Partnership Agreements, that Holland consented to or ratified those amendments, that Fogarty acknowledged Beneficial Trust's valid ownership interests, and/or that the subsequent transfer to the Fogarty Family Trust II was designed to divest Beneficial Trust of its legitimate 9% partnership interest. Accordingly, Movants have not met their burden of demonstrating that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. The Motion for Partial Summary Judgment must be, and hereby is, DENIED.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED Friday, September 25, 2026**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**